UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| MATTHEW MANNING, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NORTH CAROLINA STATE UNIVERSITY, )<br>)<br>Defendant. ) | COMPLAINT<br><br>Civil Action No.: 5:23-cv-331<br>[Jury Trial Demanded] |

NOW COMES Plaintiff, MATTHEW MANNING, by and through undersigned counsel, and complains against Defendant NORTH CAROLINA STATE UNIVERSITY as follows:

### INTRODUCTION AND NATURE OF THE CASE

Plaintiff brings this action against Defendant for disability discrimination, retaliation, and hostile work environment in violation of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. §§ 12101, *et seq.* (the "ADA" or the "ADAAA"); the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* for 1) treating him less favorably than his non-disabled coworkers and peers; 2) retaliating against him; and 3) creating a hostile work environment all due to his qualified disabilities. Plaintiff seeks all available remedies including but not limited to, front pay, back pay, compensatory, punitive and/or liquidated damages pursuant to federal and state law, as well as available equitable relief pursuant to 29 U.S.C. § 794a(a)(1), 42 U.S.C. § 2000e-5(f)-(k), and 42 U.S.C. § 1981a, or otherwise authorized pursuant to law.

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims for relief asserted herein arise under federal law, and under 28 U.S.C.

1

§ 1343(a)(4), as the claims herein seek relief under acts of Congress providing for the protection of civil rights.

2. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a).

3. This Court has personal jurisdiction over Defendant because it operates within the State of North Carolina and within this District.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

5. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

6. Plaintiff Matthew Manning ("Mr. Manning") is a citizen and resident of Wake County, North Carolina. At all relevant times, Mr. Manning was employed by North Carolina State University ("NCSU") as a Graduate Teaching Assistant ("GTA") or a Graduate Research Assistant ("GRA") in the Department of Materials Science and Engineering located in Raleigh, North Carolina.

7. At all times relevant to this Complaint, Mr. Manning was an "employee" as defined by the ADA. *See* 42 U.S.C. § 12111(4).

8. Defendant North Carolina State University ("Defendant" or "NCSU") is, and at all times relevant to this action was, a public, multi-campus university created pursuant to Chapter 116 of the North Carolina General Statutes. Defendant is registered to do business in the State of North Carolina and conducts its business as North Carolina State University. Defendant's principal place of business is located in Raleigh, Wake County, North Carolina.

9. Defendant NCSU is a body corporate capable of being sued under N.C. Gen. Stat. §116-1 for the actions of its constituent institutions. NCSU is based in Wake County, North Carolina. It is a "public entity" under 42 U.S.C. § 12131(1) and, upon information and belief, is a program that receives federal funding as defined at 29 U.S.C. § 794(b)(2)(A).

10. Upon information and belief, Defendant employs more than one hundred employees; and therefore, is a "covered entity" and "employer" as defined by the ADA. *See* 42 U.S.C. §§ 12111(2) and 12111(5)(A).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

12. Mr. Manning requested reasonable accommodations as detailed *infra*, all of which Defendant denied. Mr. Manning suffered from discrimination, harassment, and a hostile work environment caused by his supervisor Professor Yaroslava Yingling ("Yingling") in the Department of Materials Science, College of Engineering, at NCSU because of his disabilities.

13. Mr. Manning formally requested accommodations through NCSU's Disability Resources Office ("DRO") in September 2021.

14. Mr. Manning filed a grievance through Defendant's Office of Institutional Equity and Diversity ("OIED") on October 12, 2021.

15. Mr. Manning requested ADA Eligibility and Accommodations on October 17, 2021.

16. Mr. Manning signed and filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 11, 2022.

17. The EEOC issued Mr. Manning a Notice of Right to Sue on March 21, 2023.

18. Mr. Manning complied with all deadlines related to the investigation of his formal administrative complaints.

19. All conditions precedent to the institution of this lawsuit have been fulfilled.

20. Principles of sovereign immunity do not apply as a matter of law and/or because to the extent NCSU has purchased liability insurance to cover the claims alleged herein.

## FACTUAL ALLEGATIONS

### I. Mr. Manning's Background and Disabilities

21. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

22. In 2010, Mr. Manning graduated from Clemson University with a Bachelor of Science in Bioengineering, and he earned a master's degree in Secondary Education from Clemson University in the spring of 2011.

23. In or about the summer of 2016, Mr. Manning applied to NCSU's graduate program to obtain a doctorate in Materials Science and Engineering ("MSE"). Mr. Manning was accepted into the program and became a doctoral student in NCSU's College of Engineering in the Fall of 2016.

24. At NCSU, in order to earn a Doctor of Philosophy ("PhD") in Materials Science and Engineering, a doctoral student must earn 72 total credit hours. Twenty-seven of the total credit hours are comprised of nine hours of academic committee-approved upper level MSE courses, and 18 credit hours of other academic committee-approved upper-level courses. The remaining 45 required credit hours are mostly comprised of doctoral supervised research and teaching as well as doctoral dissertation research. This course of study is expected to last approximately six academic years.

25. For Mr. Manning to graduate with a doctorate in MSE, Mr. Manning must complete a dissertation. A dissertation typically consists of a research project that contributes to Mr. Manning's field of study in MSE and necessarily requires Mr. Manning to perform research as a doctoral student.

26. From the age of 10, Mr. Manning has suffered from, including but not limited to, Attention Deficit Hyperactivity Disorder ("ADHD"), Major Depressive Disorder, and Generalized Anxiety Disorder. His treating physicians have opined that his disabilities are severe and chronic.

27. Symptoms of Mr. Manning's mental disabilities include, but are not limited to, excessive worry, rumination, avoidance behaviors, perfectionism, insomnia, fatigue, low self-esteem, apathy, sadness, irritability, and poor motivation.

## II. Mr. Manning's NCSU Employment

28. At NCSU, a Graduate Teaching Assistant ("GTA") is appointed in an academic department or program and 1) directly participates in the teaching mission of the unit as instructor of record, lab instructor, recitation leader, lab or lecture assistant; 2) has responsibilities in direct support of classroom instruction in the unit, such as setting up labs or working in an instructional computer lab; and/or 3) provides general support to the teaching mission of the department program.

29. A Graduate Research Assistant ("GRA") at NCSU is appointed in an academic department or program and 1) directly participates in the research mission of the unit, or an on-campus or off-campus organization that is affiliated with the unit, in the design of experiments, data collection, analysis, or reporting of research results in the student's field of study, where research may, but is not required to, contribute directly to the student's thesis or dissertation; or 2) provides general support to the research mission of the department or program.

30. From May 16, 2017, through August 16, 2018, Mr. Manning served as a GRA for the Department of Materials Science and Engineering. His annualized salary was $15,000 for 15 hours per week of work. (He again held this position from August 1, 2020, through December 22, 2020.)

31. As a doctoral student at NCSU, Mr. Manning's employment and academic statuses were and are inextricably intertwined. Mr. Manning's academic standing affects his ability to obtain and maintain employment as a GRA, and his employment as a GRA affects his academic progress. As a GRA, the research he performs is essential for his dissertation, which is required to obtain his PhD.

32. As a GRA, Mr. Manning's job duties included assisting the professor in testing research tools, as well as gathering and analyzing data. As a GTA, his job duties included teaching his academic supervisor's classes and grading assignments.

33. In the fall semester of 2017, Mr. Manning became a GRA, and Yingling supervised his position.

### III. Mr. Manning's Request for Accommodations

34. In 2019, Mr. Manning became very depressed, so depressed that he was hospitalized on two separate occasions for treatment.

35. In the fall of 2020, Mr. Manning's severe depression began to interfere with his doctoral work and studies. Yingling expressed frustration to Mr. Manning when he struggled to perform work for her.

36. As a result, Mr. Manning requested, and was granted, a leave of absence from NCSU beginning the fall of 2020 through the spring of 2021.

37. In July of 2021, Mr. Manning's psychiatrist, Dr. Cerrone Cohen ("Dr. Cohen"), wrote to NCSU's DRO explaining Mr. Manning's chronic diagnoses and recommending disability accommodations for him so that he would be able to complete his degree.

38. From August 16, 2021, through May 15, 2022, Mr. Manning served as a GTA for the Department of Materials Science Engineering. His annualized salary was $25,000 for 20 hours per week of work.

39. Specifically, Dr. Cohen recommended the following non-exhaustive, list of accommodations for Mr. Manning: extended time for assignments and exams; course adjustments for absences due to illness or to attend appointments related to his illness, priority registration to allow for flexibility to schedule around his frequent appointments; and testing accommodations which would allow for a testing space with reduced distractions.

40. Mr. Manning returned to school and work in the fall of 2021. Upon his return, Yingling began treating Mr. Manning differently. She began to criticize his work product without providing constructive criticism, and she refused to appoint him to GRA positions because of his disabilities.

41. Yingling told Mr. Manning there were no available funds for him to continue his previous role as a GRA, so he had no choice but to accept a GTA position. In the GRA position, he would have received more pay, and it would have given Mr. Manning the opportunity to satisfy the research requirements for his dissertation to graduate with his PhD.

42. Mr. Manning formally requested accommodations through NCSU's Disability Resources Office ("DRO") in September 2021. The DRO at NCSU facilitates accommodations and services for individuals with documented disabilities and serious medical conditions.

43. NCSU's Equal Opportunity and Equity ("EOE") unit in the Office of Institutional Equity and Diversity ("OIED") spearheads the effort of diversity and inclusion and seeks to create a university experience in which everyone, regardless of beliefs, background, orientation or ability, feels at home.

44. In early October 2021, Mr. Manning spoke with Dean of the Graduate School, Peter Harries ("Dean Harries"), about Yingling treating him differently because of his disabilities and requiring him to post his medical appointments on a public, shared calendar. Understandably, Mr. Manning felt uncomfortable disclosing his personal health issues with fellow students and faculty.

45. On October 4, 2021, Mr. Manning attempted to discuss his disabilities with Yingling but to no avail; Yingling merely responded flippantly, "I also have mental health issues."

46. Not only did Yingling frequently contact Mr. Manning on his personal cell phone, but she did so outside of regular working hours, demanding that he immediately respond to student inquiries.

47. Yingling routinely inquired about Mr. Manning's mental health status during one-on-one meetings, and was aware of Mr. Manning's medical appointments, hospitalizations, the various treatments he was undergoing, and the effect of his disabilities on his work and personal life.

48. On October 10, 2021, Mr. Manning submitted a Request for ADA Eligibility and Accommodations to OIED indicating he suffered from mental disabilities and requesting reasonable accommodations. The requested accommodations included: not using his personal cell phone as a means of contact; limiting communications to business hours; exemplars of graded assignments from previous semesters; and a solution key and grading rubric for assignments.

49. On October 12, 2021, Mr. Manning submitted a Discrimination and Harassment Report Form to the EOE unit, complaining of Yingling's harassment, unrealistic expectations, and her adding unnecessary stress to his job. No investigation of Mr. Manning's complaint followed, and the OIED summarily closed Mr. Manning's complaint.

50. Yingling believed that being hard on Mr. Manning would make him a better researcher and better doctoral student. Specifically, on October 14, 2021, Yingling told Mr. Manning that she had to "push" him, even though she knew that Mr. Manning had mental disabilities and struggled coping with stress.

51. On October 15, 2021, Mr. Manning attended a meeting with EOE Officer at NCSU Dave Johnson ("Mr. Johnson"). In this meeting, he was informed that Yingling would not be disciplined even if a formal investigation revealed any evidence supporting his claims of discrimination and harassment due to her status as a tenured professor. He also was informed that if he pursued a formal investigation, his academic career and degree could be jeopardized.

52. Mr. Manning complained further with Dean Harries and was told that NCSU could not change Yingling, therefore, Mr. Manning's only options were to either complete his degree or drop out of the program.

53. On October 17, 2021, Mr. Manning requested ADA Accommodations on October 17, 2021, from the NCSU DRO.

54. On October 18, 2021, Mr. Manning inquired about funding for a spring 2022 GRA position. Yingling informed Mr. Manning that no funding existed. However, other GRAs had funding for their respective positions. Specifically, a GRA relinquished their position, which necessarily opened up additional funding. When Mr. Manning inquired about the vacant position, Yingling refused to place Mr. Manning in the position because he was a "liability" due to his

medical disabilities. Instead, Yingling hired a less qualified first year graduate student for the position.

55. As a result, despite being qualified, Mr. Manning was forced to take a different research position that paid less.

56. Defendant ostracized Mr. Manning from the doctoral program. For example, every year Yingling funded a trip for the GRAs and GTAs to attend the Materials Research Society Convention in Boston. Mr. Manning was never chosen to attend, despite being a qualified GRA and the other GRAs attending.

57. On January 11, 2022, after OIED assigned Mr. Manning a new supervisor, and closed his pending complaint. Unfortunately, Yingling supervised Mr. Manning's new assigned supervisor, Claude Reynolds, Jr. ("Reynolds"). Eventually Mr. Reynolds withdrew as his supervisor, and, at that point, Mr. Manning was left without a supervisor or advisor, a requirement of the MSE doctoral program. To date, he has neither an advisor nor supervisor.

58. In spring 2022, Mr. Manning began working in the new GRA position for less pay.

59. Mr. Manning met with OIED representative April Baer, M.D. ("Dr. Baer") on January 28, 2022, to discuss potential accommodations given his disabilities. Dr. Baer denied all accommodations he requested.

60. Instead, Dr. Baer assigned Mr. Manning to an isolated office alone with no human interaction as a purported solution to his complaints about Yingling. Such isolation segregated Mr. Manning due to his disabilities in way that adversely affected his status and opportunities, i.e., Mr. Manning was no longer located near department faculty such that he could listen for, and request to be involved in, department opportunities that his other non-disabled coworkers were.

61. On April 13, 2022, Mr. Manning received a letter from EOE. In the letter, NCSU denied Mr. Manning all requested accommodations and instead, provided a list of options for Mr. Manning to implement as ADA accommodations. The list provided the following options: 1) "Adjust your work schedule to be in alignment when the department's breakroom is available and you are more likely to engage with other members of your department/college within the building;" 2) "Use a cooler for safe food storage when you are unable to access your department's breakroom; and/or" 3) "Work from a remote location which best meets your needs." None of the listed accommodations addressed any of Mr. Manning's disabilities.

62. In June 2022, Mr. Manning's GRA position ended. Mr. Manning inquired about other GRA or GTA positions, but none were offered. Since then, Mr. Manning has not been appointed for any GRA or GTA position at NCSU.

63. In addition, as a result of Yingling's actions and influence in the department, no professor in the MSE department will agree to serve as Mr. Manning's advisor or supervisor, which is required to adequately progress through the MSE doctoral program. In light of having no supervisor or advisor and no GRA or GTA position to hold, Mr. Manning was forced to request, and take, a leave of absence from his NCSU doctoral studies.

64. To date, Mr. Manning remains on a leave of absence from the NCSU doctoral program. He will soon need to request, and be granted, another formal leave of absence lest he be terminated from the program.

**FIRST CLAIM FOR RELIEF- DISCRIMINATION**
**(Disparate Treatment/Failure to Accommodate)**
**In Violation of the Americans with Disabilities Act, as amended,**
**42 U.S.C. § 12101 et seq. (ADAAA) and Section 504 of the Rehabilitation Act of 1973,**
**29 U.S.C. § 794 et seq. (Rehabilitation Act)**

65. Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

66. At all relevant times, Plaintiff was qualified as "disabled" pursuant to the ADAAA and the Rehabilitation Act because Mr. Manning has a physical or mental impairment that substantially limits one or more major life activities and/or he has a record of such an impairment. *See* 42 U.S.C. § 12102(2)(A). Specifically, since age 10, Mr. Manning has been diagnosed and has received treatment including but not limited to Attention Deficit Hyperactivity Disorder ADHD, Major Recurrent Depressive Disorder, and Social Anxiety Disorder.

67. Additionally, the symptoms of Mr. Manning's mental disabilities limit his ability to concentrate, think, work, and communicate under certain circumstances. *See* 42 U.S.C. § 12102(2)(A).

68. Mr. Manning is also a "qualified individual" pursuant to the ADAA because prior to his leave of absence from NCSU, he, in fact, performed the essential functions of his job without reasonable accommodation, including but not limited to, co-authoring at least three publications with Yingling and successfully completing at least one GRA position.

69. Mr. Manning is also a "qualified individual" pursuant to the ADAA because he could perform his job with reasonable accommodations. Though Mr. Manning could perform his job without reasonable accommodations, he sought accommodations in the fall of 2021, because, including but not limited to, Yingling began to "push him" and take actions toward him that she did not take against other non-disabled employees, informed him he was "a liability" as the reason she would not appoint him to a GRA position, and such actions were directly related to his disabilities.

70. Defendant and its employees were aware of Mr. Manning's disabilities because inter alia, Mr. Manning: 1) submitted a Discrimination and Harassment Report Form to the EOE of OIED on October 12, 2021, alleging discrimination and harassment due to his disabilities; 2)

12

Case 5:23-cv-00331-D-BM    Document 1    Filed 06/19/23    Page 12 of 20

met with EOE Officer Johnson to discuss discrimination of him due to his disabilities; 3) met and attempted to discuss his disabilities with Yingling.

71. Defendant intentionally discriminated against Mr. Manning, a qualified individual with disabilities, by treating him less favorably than his non-disabled coworkers and peers regarding job training, career advancement opportunities, and other terms, conditions, and privileges of his employment with NCSU in violation of the Act. *See* 42 U.S.C. § 12112(a).

72. Mr. Manning was deprived of a GRA position for which first, Yingling stated no funding existed, and then later Yingling admitted funding was available but she would not appoint Mr. Manning to the position because she considered him "a liability." Yingling instead appointed a less experienced and less qualified non-disabled individual to said GRA position.

73. Mr. Manning has been subjected to adverse employment actions by the Defendant. Mr. Manning was denied reasonable disability accommodations, required to publicly post his medical appointments on a publicly shared calendar in which his coworkers and graduate school faculty utilized was denied suitable GRA positions for false reasons.

74. Defendant patently refused Mr. Manning's proposed reasonable accommodations and did not offer any reasonable accommodations for Mr. Manning. As such, Defendant failed to, and refused to, engage in the interactive process of determining reasonable accommodation for Mr. Manning's disabilities. Likewise, Defendant did not assert that any and all accommodations would fundamentally alter the MSE doctoral program, and thus, failed to set forth any undue hardship that would have allegedly resulted.

75. Mr. Manning was treated less favorably than his non-disabled coworkers and fellow doctoral students who were employed as GRAs. The adverse employment actions taken against

Mr. Manning were based solely on his disabilities and the reading, comprehension, communication, and work-related issues resulting therefrom.

76. Any proffered reason by Defendant for its failure and/or refusal to provide any accommodation for Mr. Manning are thus pretext.

77. Yingling's actions, as described, were committed in the course and scope of her employment with Defendant such that the doctrine of respondeat superior imputes liability for Yingling's actions to Defendant.

78. As a direct, foreseeable, and proximate result of Defendant's violations of the Acts as described herein, Mr. Manning has suffered and continues to suffer emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

79. As a further direct, foreseeable, and proximate result of Defendant's violations of the Acts as described herein, Plaintiff has suffered and continues to suffer pecuniary losses in the form of *inter alia*, tuition paid, lost income, interest, and benefits including his inability to progress (i.e., earn credits and complete a dissertation) through the doctoral program as other non-disabled individuals.

**SECOND CLAIM FOR RELIEF - RETALIATION**
**In Violation of the Americans with Disabilities Act, as amended,**
**42 U.S.C. § 12101 et seq. (ADAAA) and Section 504 of the Rehabilitation Act of 1973,**
**29 U.S.C. § 794 et seq. (Rehabilitation Act)**

80. Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

81. Mr. Manning engaged in protected activities, as described *supra*, including but not limited to, requesting reasonable accommodations due to his disabilities and submitting complaints to NCSU's DRO and OIED complaining of discrimination, harassment, and retaliation by Yingling filing an EEOC charge.

82. After Mr. Manning engaged in protected activities that Yingling knew he had engaged in, Mr. Manning suffered adverse employment actions by Yingling against him, including but not limited to, refusing to appoint him to a GRA position and appointing a less qualified, less experienced non-disabled individual because she believed Mr. Manning was "a liability"; removing him as co-author from at least one publication in which he was heavily involved; telling him that she had to "push" Mr. Manning due to his disabilities; imposing unrealistic expectations and requirements of Mr. Manning that she did not impose upon other non-disabled doctoral students; harassing Mr. Manning by requiring that he post his medical appointments on a public calendar utilized by other doctoral students and faculty; repeatedly calling Mr. Manning on his cell phone outside of business hours and demanding that he answer student inquiries immediately.

83. In light of the temporal proximity of Mr. Manning's engagement in the protected activities and the adverse employment actions taken against him by Yingling, as well as alleged *supra*, said adverse employment actions were taken against Mr. Manning either solely due to his disabilities, because of his disabilities, and/or was a motivating cause of said adverse employment actions.

84. Yingling's actions, as described, were committed in the course and scope of her employment with Defendant such that the doctrine of respondeat superior imputes liability for Yingling's actions to Defendant.

85. As a direct, foreseeable, and proximate result of Defendant's violations of the Acts as described herein, Mr. Manning has suffered and continues to suffer emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

86. As a further direct, foreseeable, and proximate result of Defendant's violations of the Acts as described herein, Plaintiff has suffered and continues to suffer pecuniary losses in the

form of inter alia, tuition paid, lost income, interest, and benefits including his inability to progress (i.e., earn credits and complete a dissertation) through the doctoral program as other non-disabled individuals.

**THIRD CLAIM FOR RELIEF- HOSTILE WORK ENVIRONMENT**
**In Violation of the Americans with Disabilities Act, as amended,**
**42 U.S.C. § 12101 et seq. (ADAAA) and Section 504 of the Rehabilitation Act of 1973,**
**29 U.S.C. § 794 et seq. (Rehabilitation Act)**

87. Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

88. Mr. Manning, an individual with a qualified disability, was subjected to continuous unwelcome comments, harassment, and hostility beginning in the fall of 2021 from Yingling, Mr. Manning's supervisor and advisor.

89. Yingling harassed and discriminated against Mr. Manning and created an overtly hostile working environment by, including to but not limited to mocking him; refusing to provide him with guidance on how to improve his work product that Yingling constantly insisted was wrong; telling Mr. Manning that he was a "risk" and a "liability" because of his disability; stating flippantly she too had mental health issues when Mr. Manning attempted to speak to her about his disabilities; making Mr. Manning publicly post his medical appointments and as otherwise alleged *supra*.

90. The discrimination and hostility that Mr. Manning endured from Yingling was unwelcome, severe and pervasive, and he took every available course of action in an attempt to stop it. Mr. Manning complained about Yingling's discrimination and hostility towards him to Defendant including but not limited to filing a grievance through the OIED in October 2021; seeking assistance from Dean Harries; filing a complaint with DRO; speaking with EOE Officer Mr. Johnson in October 2021 and as otherwise alleged *supra*.

91. Said unwelcome discrimination and hostility was sufficiently severe and pervasive in that it altered the conditions of Mr. Manning's employment and created an abusive work environment for Mr. Manning in that he submitted complaints of her discrimination and retaliation to the DRO, EOE, and OIED at NCSU; he sought assistance from NCSU CARES on how to address how Yingling treated him in the workplace; he filed an EEOC charge alleging that Defendant discriminated against him based on his disabilities and retaliated against him for reporting said discrimination, and as otherwise alleged *supra*.

92. Said unwelcome harassment and hostility was objectively sufficiently severe or pervasive in that a reasonable person could conclude so based on the frequency of the unwelcome discrimination and hostility, its severity, and its humiliating impact upon Mr. Manning, as well as its unreasonable interference with his work performance, including but not limited to, making comments about Mr. Manning being a "risk," forcing him to post his medical appointments to a public calendar, telling him flippantly that she too had mental health issues when he attempted to speak to her about his disability, and telling him that his disability made him a "liability."

93. Defendant knew of the harassment that Mr. Manning endured but took no corrective or remedial action. Defendant refused to investigate any of the allegations concerning Yingling that Mr. Manning's submitted in his complaints.

94. Defendant is liable for the discrimination and hostility Mr. Manning endured, as described, because it had actual knowledge of, and participated in perpetuating the hostile work environment. Mr. Manning filed complaints detailing how Yingling discriminated against him based on his disability. Instead, Defendant upheld all disciplinary actions Yingling took against him, each of which were discriminatory in nature because her actions were a direct result of Mr. Manning's disabilities.

95. Yingling's actions, as described, were committed in the course and scope of her employment with Defendant such that the doctrine of respondeat superior imputes liability for Yingling's actions to Defendant.

96. The unlawful employment discrimination complained of hereinabove was intentional because Defendant acted maliciously and with reckless indifference to Mr. Manning's federally protected rights by refusing to take any remedial action to stop Yingling's blatant discrimination and/or correct the hostile work environment as set forth herein.

97. As a direct, foreseeable, and proximate result of Defendant's violations of the Acts as described herein, Mr. Manning has suffered and continues to suffer emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

98. As a further direct, foreseeable, and proximate result of Defendant's violations of the Acts as described herein, Plaintiff has suffered and continues to suffer pecuniary losses in the form of inter alia, tuition paid, lost income, interest, and benefits including his inability to progress (i.e., earn credits and complete a dissertation) through the doctoral program as other non-disabled individuals.

### SEVENTH CAUSE OF ACTION
### Punitive Damages

99. Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

100. The acts of Defendant alleged hereinabove were committed with either an evil motive and/or with reckless and wonton disregard for the rights of Mr. Manning.

101. As described, Defendant, through the acts of its upper-level supervisors and staff, acted willfully, consciously, and intentionally disregarded and/or showed reckless indifference to Mr. Manning's right to be free from discrimination, retaliation, and harassment based on his

18

Case 5:23-cv-00331-D-BM    Document 1    Filed 06/19/23    Page 18 of 20

disabilities. Defendant, through the acts of its employees, consciously and maliciously continued to discriminate and retaliate against Mr. Manning to block him from available GRA and GTA positions.

102. As a direct, foreseeable, and proximate result of Defendant's violations of the Acts as described herein, Mr. Manning has suffered and continues to suffer emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

103. As a further direct, foreseeable, and proximate result of Defendant's violations of the Acts as described herein, Plaintiff has suffered and continues to suffer pecuniary losses in the form of inter alia, tuition paid, lost income, interest, and benefits including his inability to progress (i.e., earn credits and complete a dissertation) through the doctoral program as other non-disabled individuals.

104. Based on the foregoing and, pursuant to N.C. Gen. Stat. § 1D-15, Mr. Manning is entitled to recover punitive damages from Defendant.

## JURY DEMAND

Plaintiff demands a trial by jury of the claims asserted in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays the Court for judgment against Defendant to the full extent permitted by 29 U.S.C. § 794a(a)(1), 42 U.S.C. § 2000e-5(f)-(k), and 42 U.S.C. § 1981a, including but not limited to, the following:

1. Judgment in Plaintiff's favor, determining that Defendant's actions and conduct relating to Plaintiff's violated the Americans with Disabilities Act;

2. Award Plaintiff back pay, front pay, and all other monetary damages incurred, including but not limited to lost salary, interest, and benefits;

3. Award Plaintiff damages for mental anguish, emotional distress, pain and suffering, loss of enjoyment of life, inconvenience, medical bills, and other non-pecuniary damaged Plaintiff suffered as a result of the intentional lawful actions and conduct of Defendant in violation of the ADAA in an amount to be determined at trial;

4. Award Plaintiff punitive damaged as allowed by law;

5. Award Plaintiff the costs, disbursements, expenses, reasonable attorneys' fees, and expert witness fees incurred by Plaintiff in filing and prosecuting this action as may be authorized by any other applicable federal laws;

6. For an award of pre- and post-judgment interest to Plaintiff on all damages; and

7. For all other further relief as this Court deems just and appropriate.

This is the 19th day of June, 2023.

**GREEN MISTRETTA LAW, PLLC**

/s/ Dawn T. Mistretta
Dawn T. Mistretta, N.C. State Bar No. 31691
Aliyah S. Adams, N.C. State Bar No. 58756
1752 Heritage Center Drive, Suite 101
Wake Forest, North Carolina 27587
Telephone: (919) 278-7453
Facsimile: (855) 876-8893
dmistretta@gmlawyers.org
aadams@gmlawyers.org
*Counsel for Plaintiff*