## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## CIVIL ACTION NO.: 5:23-cv-331-D

| | | |
|---|---|---|
| MATTHEW MANNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **BRIEF IN SUPPORT OF** |
| | ) | **DEFENDANT'S MOTION TO DISMISS** |
| NORTH CAROLINA STATE | ) | **COMPLAINT** |
| UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

Since 2016, Matthew Manning has been a doctoral student with teaching assistant and research appointments in the Materials Science and Engineering Department ("MSE Department") of the College of Engineering at North Carolina State University ("NC State"). In his Complaint, Plaintiff alleges NC State discriminated and retaliated against him and created a hostile work environment due to his disabilities in violation of 42 U.S.C. § 12101 et seq., Title I of the Americans with Disabilities Act ("ADA"), and 29 U.S.C. § 790 et seq., Section 504 of the Rehabilitation Act ("Section 504").

However, many (if not most) of Plaintiff's ADA claims are time barred, or the Court lacks jurisdiction over such claims due to Plaintiff's failure to exhaust administrative remedies. And, all of Plaintiff's Section 504 claims are time barred. Additionally and alternatively, Plaintiff has failed to allege sufficient facts to support his claims for discrimination (disparate treatment and failure to accommodate), retaliation, and hostile work environment such that the claims should be dismissed.

1

## STATEMENT OF THE CASE

On June 19, 2023, Plaintiff filed a Complaint against NC State, asserting three causes of action:

**A.** Discrimination (disparate treatment/failure to accommodate) under the ADA and Section 504;

**B.** Retaliation under the ADA and Section 504; and

**C.** Hostile work environment under the ADA and Section 504.

D.E. 1 ("Compl.") pp. 11-16. Plaintiff seeks compensatory and punitive damages.

NC State was served with the Complaint on or about July 5, 2023, making its responsive pleading due July 26, 2023. On July 7, 2023, undersigned counsel filed a Consent Motion for Extension of Time to File Responsive Pleading, D.E. 7, which the Court granted, extending the time for NC State to respond to the Complaint up to and including August 25, 2023.

## STATEMENT OF FACTS[1]

In the summer of 2016, Plaintiff applied to NC State's MSE graduate program. Compl. ¶ 23. Plaintiff was accepted into the program and became a doctoral student in NC State's College of Engineering in the fall of 2016. *Id.*

Since becoming a graduate student at NC State, Plaintiff has been appointed as a Graduate Teaching Assistant ("GTA") and a Graduate Research Assistant ("GRA"). A GTA is appointed in an academic department or program and 1) directly participates in the teaching mission of the unit as instructor of record, lab instructor, recitation leader, lab or lecture assistant; 2) has responsibilities in direct support of classroom instruction in the unit, such as setting up labs or working in an

---

[1] For purposes of this motion, NC State acknowledges that the Court will assume the truth of all well-pleaded factual allegations. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). However, by filing this motion, NC State does not intend to admit the truth of the allegations.

instructional computer lab; and/or 3) provides general support to the teaching mission of the department program. Compl. ¶ 28. Similarly, a GRA is appointed in an academic department or program and 1) directly participates in the research mission of the unit, or an on campus or off-campus organization that is affiliated with the unit, in the design of experiments, data collection, analysis, or reporting of research results in the student's field of study, where research may, but is not required to, contribute directly to the student's thesis or dissertation; or 2) provides general support to the research mission of the department or program. Compl. ¶ 29.

From May 16, 2017, through August 16, 2018, and again from August 1, 2020, through December 22, 2020, Plaintiff served as a GRA for the MSE Department and was supervised by Professor Yaroslava Yingling. Compl. ¶¶ 30, 33. In the fall of 2020, Plaintiff's severe depression began to interfere with his doctoral work and studies. Compl. ¶ 35. As a result, Plaintiff requested and was granted a leave of absence from NC State through the spring of 2021. Compl. ¶ 36.

Plaintiff alleges that, after returning from leave, Dr. Yingling treated him "differently," including criticizing his work and refusing to appoint him to a GRA position due to his disabilities. Compl. ¶ 40. Despite Plaintiff's claim that he was treated negatively due to his disabilities, Plaintiff served in a GTA position for fall 2021. Compl. ¶ 38.

In September 2021, Plaintiff formally requested accommodations through NC State's Disability Resources Office ("DRO"). Compl. ¶ 42.[2] And, on October 10, 2021, Plaintiff submitted a Request for ADA Eligibility and Accommodations to the Office for Institutional Equity and Diversity ("OIED") in which he indicated that he suffered from mental disabilities and requested accommodations. Compl. ¶ 48.

---

[2] Plaintiff also alleges that he requested ADA accommodations from DRO on October 17, 2021. Compl. ¶ 53.

On October 12, 2021, Plaintiff submitted a Discrimination and Harassment Report Form to the Equal Opportunity and Equity ("EOE") unit of the OIED, complaining of "Yingling's harassment, unrealistic expectations, and her adding unnecessary stress to his job." Compl. ¶ 49.

Even after he submitted a claim of alleged harassment by Dr. Yingling to the OIED, on October 18, 2021, Plaintiff asked Dr. Yingling about funding for a spring 2022 GRA position; Dr. Yingling informed him that no funding existed for such a position but, when a GRA position later opened, she gave the position to another graduate student. Compl. ¶ 54. Plaintiff accepted another GRA position for spring 2022. Compl. ¶¶ 54-55.

In response to Plaintiff's complaint of harassment by Dr. Yingling, the OIED assigned Plaintiff a new supervisor. Compl. ¶ 57.

Plaintiff met with April Baer, an OIED representative, on January 28, 2022, to discuss potential accommodations for his disabilities. Compl. ¶ 59. On April 13, 2022, Plaintiff received a letter from the OIED's EOE unit in response to his request for accommodations. Compl. ¶ 61. This letter provided several options for "Plaintiff to implement as ADA accommodations." *Id.*

In June 2022, Plaintiff's GRA position ended. Compl. ¶ 62. Thereafter, Plaintiff had difficulty finding an advisor or supervisor, and he took a leave of absence from his doctoral studies at NC State. Compl. ¶ 63.

Plaintiff signed and filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 11, 2022. Compl. ¶ 16. The EEOC issued Plaintiff a Determination and Notice of Rights on March 21, 2023. Compl. ¶ 17.

## LEGAL STANDARD FOR DISMISSAL

Plaintiff's claims should be dismissed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure based on lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must prove jurisdiction to survive dismissal. *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

However, when considering a motion under Rule 12(b)(6), "it is not . . . proper to assume that plaintiff[] can prove facts that [he has] not alleged or that the defendant[] [has] violated the . . . law[] in ways that have not been alleged." *Estate Constr. Co. v. Miller & Smith Holding, Co.*, 14 F.3d 213, 221 (4th Cir. 1994) (citation omitted). If the complaint does not plead "sufficient factual matter" to state a claim, it must be dismissed. *Iqbal*, 556 U.S. at 678 Likewise, if the complaint merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it must be dismissed. *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

## ARGUMENT

Plaintiff alleges claims for discrimination, retaliation, and hostile work environment under both the ADA and Section 504. Under Title I of the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112. And, under Section 504, "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [federal funding]." 29 U.S.C. § 794.

This Court should dismiss Plaintiff's ADA claims for events that occurred before October 13, 2021, as time barred, and for events that occurred after April 11, 2022, for failure to exhaust administrative remedies and lack of jurisdiction. All of Plaintiff's Section 504 claims are time barred and should be dismissed. As for any remaining claims (and, in the alternative, for claims that are time barred or for which the Court lacks jurisdiction), Plaintiff has not pleaded sufficient facts to establish that NC State violated the ADA or Section 504. *See Iqbal*, 556 U.S. at 678. Finally, Plaintiff is not entitled to punitive damages.

I.  **MANY OF PLAINTIFF'S ADA CLAIMS SHOULD BE DISMISSED AS UNTIMELY OR FOR LACK OF JURISDICTION, AND ALL OF PLAINTIFF'S SECTION 504 CLAIMS SHOULD BE DISMISSED AS UNTIMELY.**

A.  **Claims under the ADA**

"The ADA incorporates the administrative enforcement provisions of Title VII of the Civil Rights Act of 1964, including the requirement that a person exhaust her administrative remedies by filing a charge with the EEOC concerning the alleged discrimination before filing suit in federal court." *Williams v. N.C. Admin. Office of the Courts*, 364 F. Supp. 3d 596, 601 (citing 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012); *Thiessen v. Stewart—Haas Racing, LLC*, 311 F. Supp. 3d 739,743 (M.D.N.C. 2018)). Therefore, a court has subject-matter jurisdiction over an ADA claim only if the plaintiff exhausted administrative remedies by filing an EEOC charge concerning the alleged discrimination before filing suit. *Id.* (citing *Tagirova v. Elizabeth City State Univ.*, No. 2:16-CV-70-D, 2017 U.S. Dist. LEXIS 146132, 2017 WL 4019516, at *1 (E.D.N.C. Sept. 11, 2017) (unpublished); *Webb v. N.C. Dep't of Crime Control & Pub. Safety*, 658 F. Supp. 2d 700, 707-09 (E.D.N.C. 2009)). While a total failure to file an EEOC charge regarding an alleged ADA violation is a jurisdictional bar to filing suit, the timeliness of such filing is not jurisdictional. *Id.* Rather, if a party fails to file an EEOC charge in a timely manner (i.e., within 180 days of the alleged violation as required by 42 U.S.C. § 2000e-5(e)(1)), the party "'lose[s]

the ability to recover for' that claim because the claim is no longer 'actionable," *id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)), in which case dismissal under Rule 12(b)(6) is appropriate, *id*. Each allegedly unlawful practice must separately satisfy the 180-day test. *Williams v. Giant Food, Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) (citing *Nat'l R.R. Passenger v. Morgan*, 536 U.S. 101, 113 (2002)).

Plaintiff filed his charge with the EEOC on April 11, 2022. Compl. ¶ 16. As a result, Plaintiff's ADA claims for discrimination, retaliation, and hostile work environment based on events that occurred prior to October 13, 2021 (180 days before April 11, 2022) would be time barred and should be dismissed. For example, Plaintiff alleges that, on October 10, 2021, he sought accommodations related to treatment by Dr. Yingling (not using his personal cell phone as a means of contact; limiting communications to business hours; exemplars of graded assignments from previous semesters; and a solution key and grading rubric for assignments). *Id.* at ¶48. Similarly, Plaintiff alleges that, on October 12, 2021, he submitted a grievance (specifically, a "Discrimination and Harassment Report Form") to the OIED "complaining of Yingling's harassment, unrealistic expectations, and her adding unnecessary stress to his job." Compl. ¶¶ 14, 49. However, any claims stemming from events that were the subject of Plaintiff's grievance or request for accommodations occurred more than 180 days before his filing with the EEOC and are time barred. Likewise, other events specifically alleged in the Complaint that occurred prior to October 12, 2021, and that Plaintiff contends amount to violations of the ADA, are time barred. *See, e.g.*, Compl. ¶¶ 45-46 ("On October 4, 2021, Mr. Manning attempted to discuss his disabilities with Yingling but to no avail; Yingling merely responded flippantly . . . ."); ("Not only did Yingling frequently contact Mr. Manning on his personal cell phone, but she did so outside of regular working hours . . . ."). Consequently, these time barred claims should be dismissed pursuant to Rule 12(b)(6) as no longer actionable. *See Williams,* 364 F. Supp. 3d at 601.

Similarly, any of Plaintiff's claims under the ADA that arose after he filed his charge with the EEOC (on April 11, 2022) should be dismissed under Rule 12(b)(1) due to the failure to exhaust administrative remedies. Specifically, Plaintiff alleges that, on April 13, 2022, he "received a letter from EOE" in which "NCSU denied Mr. Manning all requested accommodations . . . ." Compl. ¶ 61. And, Plaintiff alleges that, in June 2022, his GRA position ended and that he has not been offered any position since. *Id.* at ¶ 62. Given that these events occurred after he filed his charge with the EEOC and, therefore, were not included in his filing, he has failed to exhaust administrative remedies as to these alleged events, and this Court has no subject matter jurisdiction over the claims.

As such, the only potentially viable claims under the ADA[3] are for those events that occurred between October 13, 2022, and April 11, 2022.

**B.     Claims under Section 504**

Section 504 "does not contain a specific limitations period. In such situations, Congress has directed the courts to select the most appropriate state statute of limitations to apply to the federal cause of action." *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 129 (4th Cir. 1994). The Fourth Circuit has concluded that N.C. Gen. Stat. § 168A-12 is the most analogous statute and that its 180-day limitations period should be applied to disability employment discrimination claims. *Id.* (finding that N.C. Gen. Stat. § 168A-1 et seq. "is the most analogous state statute to the ADA and Rehabilitation Act," and should have been applied to the plaintiff's Section 504 claims); *see also Harris v. North Carolina*, 2018 U.S. Dist. LEXIS 148246*, *8 (E.D.N.C. 2018) ("The most analogous state law here is the North Carolina Handicapped Persons Protection Act," which "promulgates a 180-day statute of limitations for employment discrimination cases."). Because Plaintiff filed his complaint well beyond 180 days after what could even arguably constitute the last alleged violation

---

[3] For the reasons set forth below in more detail, NC State believes that all of Plaintiff's claims are subject to dismissal.

of Section 504, *see* Compl. ¶ 62 (Plaintiff was not appointed as a GRA or GTA after his GRA ended in June 2022), all of his claims under Section 504 should be dismissed under Rule 12(b)(6) as untimely. *Id.*

## II.     PLAINTIFF HAS FAILED TO STATE ANY CLAIM FOR RELIEF UNDER THE ADA AND SECTION 504.

Plaintiff purports to bring his claims under both Title I of the ADA and Section 504.[4]  Compl. pp. 11, 14 and 16.  As set forth above, most of Plaintiff's claims under the ADA should be dismissed as untimely or for lack of jurisdiction, and all of Plaintiff's claims under Section 504 should be dismissed as untimely.  However, additionally or in the alternative, Plaintiff's claims fail under both the ADA and the Rehabilitation Act.

### A.     Plaintiff Has Failed to Allege Facts Sufficient to Support Any Claim of Disability Discrimination in Violation of the ADA or the Rehabilitation Act.

In his First Claim for Relief, Plaintiff alleges that NC State discriminated against him in violation of the ADA and Section 504 based on disparate treatment as well as failure to provide a reasonable accommodation in employment.

> Employment discrimination claims brought under Section 504 are evaluated using the same standards as those "applied under [T]itle I of the Americans with Disabilities Act of 1990." *Id.* § 794(d). Of significance here, Title I prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" by "not making reasonable accommodations to the known physical or mental limitations  of an otherwise qualified individual with a disability who is an applicant or employee, unless [a] covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A) (2012). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

---

[4] As an initial matter, Plaintiff's Complaint states that he was "employed" by NC State in the capacity of a GTA or GRA and additionally claims that he was an "employee" as defined by the ADA. Compl. ¶¶ 6-7.  Accordingly, NC State responds to Plaintiff's allegations relating principally to his activities as an employee (and not those relating to his status as a graduate student).

*Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 413-414 (4th Cir. 2015). An individual is disabled under the ADA or Rehabilitation Act if he has "a physical or mental impairment that substantially limits . . . one or more . . . major life activities." 42 U.S.C. § 12102(2)(A); *see* 29 U.S.C. § 705(20)(B). Defendant acknowledges that Plaintiff has alleged that he is a person with a disability and that such disability substantially limits one or more major life activities. Compl. ¶¶ 26, 34-35, 66-67. Moreover, NC State acknowledges that Plaintiff has alleged that he is a "qualified individual," Compl. ¶¶ 68-69, and, for purposes of its Motion to Dismiss, will assume without admitting that Plaintiff is a qualified individual. However, for the reasons set forth below, Plaintiff has failed to state a discrimination claim.

### 1. Plaintiff Has Failed to Establish a Claim for Disparate Treatment in Violation of the ADA and Section 504.

A plaintiff may prove a disability discrimination claim through two avenues of proof: by presenting direct evidence of discrimination or by relying on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L.Ed.2d 668 (1973). Direct evidence of discrimination exists where the defendant has "announced, or admitted, or otherwise unmistakably indicated that [Plaintiff's disability] was a determining factor" in the employment decisions at issue. *Cline v. Roadway Express, Inc.,* 689 F.2d 481, 485 (4th Cir. 1982). More specifically, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006). Such direct evidence is not present in this case.

A careful examination of the allegations in the Complaint reveals that Plaintiff has included language that provides an illusion of direct evidence, but it falls short. This attempt centers on a purported statement made by Dr. Yingling in an alleged discussion about a position vacancy. Plaintiff claims that "Yingling refused to place [Plaintiff] in the position because he was a 'liability'

due to his medical disabilities," Compl. ¶ 54, and "Yingling . . . informed him he was "a liability" as the reason she would not appoint him to a GRA position, and such actions were directly related to his disabilities," Compl. ¶ 69. According to the wording in the Complaint, the only quote attributed to Dr. Yingling was that Plaintiff was a "liability;" the remainder of the allegations are conclusory statements supplied by Plaintiff to try and connect the single word "liability" to Plaintiff's disability. Plaintiff does not quote Dr. Yingling as stating to Plaintiff something along the lines of "you are a liability because you have a disability," but rather only that Plaintiff was a "liability." The mere comment that Plaintiff was a "liability,"–without more–is not a clear announcement, admission, or unmistakable indication that Dr. Yingling possessed the requisite discriminatory intent to establish a violation of disability law. Consequently, Plaintiff's claim should be analyzed based on the familiar *McDonnell-Douglas* test.

Under the applicable (*McDonnell-Douglas*) framework, to establish a claim for disparate treatment in violation of the ADA or the Rehabilitation Act, the plaintiff must allege that (1) he is within the ADA's protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse employment action, he was performing his job at a level that met his employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances giving rise to a reasonable inference of unlawful discrimination. *Williams v. Brunswick County Bd. of Educ.*, 725 F. Supp. 2d 538, 543 (E.D.N.C. 2010) (citing *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11, 391-92 (4th Cir. 2001) (applying *McDonnell-Douglas* framework to ADA claim); *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019) (applying *McDonnell-Douglas* framework to Rehabilitation Act claim)). A careful examination of Plaintiff's Complaint reveals that he has failed to allege facts that would support a claim of discrimination based on disparate treatment.

First, Plaintiff claims that he was discriminated against because NC State "treated him less favorably than his non-disabled co-workers and peers regarding job training, career advancement

opportunities, and other terms, conditions, and privileges of his employment;" that he was deprived of a GRA position; and that he was "required to publicly post his medical appointments on a publicly shared calendar." Compl. ¶¶ 71-73. However, the allegations in the Complaint do not rise to the level of an adverse employment action against Plaintiff. "For a discrimination claim, the plaintiff must show that [his] employer took an action that adversely 'affect[ed] *employment* or alter[ed] the conditions of the *workplace*.'" *Laird v. Fairfax Cty.*, 978 F.3d 887, 893 (4th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). "An adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (*quoting Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)). While the analysis of an adverse action "depends on the particular circumstances of the case," an adverse action must be tangible. *Adams v. Anne Arundel Cty. Pub. Sch*., 789 F.3d 422, 431 (4th Cir. 2015). Employment action that does not result in a reduction in grade, salary, benefits, level of responsibility, or title does not rise to the level of an adverse action. *See, e.g., Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). The Fourth Circuit and its District Courts have considered and rejected reprimands, harsh criticism, disparaging remarks and humiliation offered as "adverse action." *See Guluma v. DeJoy*, No. DLB-20-3588, 2022 U.S. Dist. LEXIS 92982, at *5-6 (D. Md. May 24, 2022) (concluding that, where supervisor yelled name loudly and was more critical of plaintiff than others, allegations did not rise to the level of adverse employment action); *Vedula v. Azar*, No. TDC-18-0386, 2020 U.S. Dist. LEXIS 166284, at *25 (D. Md. Sept. 11, 2020) ("incidents of yelling at an employee at a meeting and refusing to address employment-related complaints generally do not 'rise to the level of an adverse employment action . . .'"); *Booth v. County Exec.*, 186 F. Supp. 3d 479, 485 (D. Md. 2016) (claims that supervisor humiliated plaintiff in two meetings, made jokes about him, and isolated him

from other employees, did not assert an adverse employment action); *Adams* at 431 (scolding of assistant principal by principal was not an adverse action when not linked to any material change in the conditions of employment). Mere "dislike of or disagreement with an employer's decisions does not invariably make those decisions ones that adversely affected some aspect of employment." *Id.*

As perhaps the main focus of his disparate treatment claim, Plaintiff alleges that he was not appointed to the GRA position he wanted for Spring Semester 2022. However, he also alleges that, from August 16, 2021, through May 15, 2022, he served as a GTA in the MSE Department under Dr. Yingling. Compl. ¶ 38. Later, in Spring Semester 2022, he moved into a GRA appointment with a different supervisor. Compl. ¶¶ 57-58. During Fall Semester 2021, while he had his GTA appointment that was originally to last through Spring Semester 2022, Plaintiff inquired about funding for a *different* appointment (a spring 2022 GRA position) and was told there was no funding. Compl. ¶ 54. Plaintiff alleges that a GRA position that he found more desirable than his GTA or GRA appointment later opened, but that he was not given that position. *Id.* Nonetheless, Plaintiff held appointments with NC State for the 2021-2022 academic year. He was not fired or demoted. The fact that Plaintiff was not placed into a higher paying position that he desired does not equate to an adverse employment action. *See Laird v. Fairfax Cty.*, 978 F.3d 887, 893 ("for a discrimination claim, the adverse action must result in 'some significant detrimental effect,' requiring more than a position that is 'less appealing' to the plaintiff") (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)).

Plaintiff also alleges that he was treated less favorably than his peers regarding job training, career advancement opportunities, and other terms, conditions, and privileges, *see* Compl. ¶ 71, but fails to offer sufficient factual support for this claim. For example, while he makes the conclusory allegation that Dr. Yingling "hired a less qualified first year graduate student," Compl. ¶ 54, for the GRA position he desired, Plaintiff provides no details comparing his qualifications to those of the

13

student who was offered the position. Similarly, while he alleges that he was not chosen to attend a convention in Boston, he provides no factual information regarding how participants were chosen and offers no comparison between his qualifications and the qualification of those chosen to attend. Other than these conclusory examples, Plaintiff provides no other examples of how peers were treated more favorably. Moreover, these examples do not rise to the level of an adverse action (e.g., reduction in grade, salary, benefits, level of responsibility, or title). *See, e.g., Boone*, 178 F.3d at 255.

Likewise, for the same reason, Plaintiff's third ground for disparate treatment–that he was required to post his medical appointments on a shared calendar–does not amount to an adverse employment action. *See, e.g., Booth*, 186 F. Supp. 3d at 485.

Second, Plaintiff fails to establish that his job performance was satisfactory. In the Complaint, Plaintiff provides the descriptions of GTA and GRA appointments. Compl. ¶¶ 28-29 (including participating in the teaching mission of the unit as instructor of record, lab instructor, recitation leader, lab or lecture assistant; directly supporting classroom instruction in the unit; and directly participating in the research mission of the unit). Plaintiff further alleges that, as a GRA, his job duties included "assisting the professor in testing research tools, as well as gathering and analyzing data," and that, as a GTA, his job duties included "teaching his academic supervisor's classes and grading assignments." Other than his conclusory allegation that he "successfully" completed at least one GRA position, Compl. ¶ 68,[5] nowhere does Plaintiff allege that he was performing these duties to the satisfaction of his employer.

---

[5] Plaintiff also alleges that he performed the essential functions of the job (although not necessarily satisfactorily) because he co-authored three publications. Compl. ¶ 68. There is no allegation in the Complaint (and NC State disputes) that serving as a co-author was part of Plaintiff's appointments as a GTA or GRA or was related to employment (as opposed to part of Plaintiff's work as a student). Thus, allegations regarding co-authoring publications provide no support for Plaintiff's job performance.

In fact, Plaintiff admits that he "struggled to perform work" for Dr. Yingling in the fall of 2020 and that, in the fall of 2021, Yingling "criticized his work product." Compl. ¶¶ 35, 40. Given that Plaintiff has not alleged anywhere in his Complaint that his job performance was meeting his employer's expectations, Plaintiff failed to establish a necessary element of a claim for discrimination/disparate treatment.

Finally, the failure to appoint Plaintiff to the GRA position he desired, the requirement that he post appointments on a shared calendar, and the conclusory allegation that he was treated less favorably than coworkers did not occur under circumstances giving rise to a reasonable inference of unlawful discrimination. Plaintiff alleges that Yingling supervised him beginning in 2017 under multiple GTA and GRA appointments. Compl. ¶ 33. She supervised him after he was hospitalized for depression and after he took a leave of absence for depression. Compl. ¶ 34, 36. She even continued to supervise him after his "severe depression began to interfere" with his work and after she "expressed frustration to [Plaintiff] when he struggled to perform work for her." Compl. ¶¶ 35. As the Complaint shows, there is a long history of Dr. Yingling's supervision and support of Plaintiff such that it cannot be inferred that the examples on which Plaintiff relies amount to unlawful discrimination. *See Williams v. Brunswick County Bd. of Educ.*, 2010 U.S. Dist. LEXIS 66286, *20 (finding no reasonable inference of unlawful discrimination where the supervisor was aware of the employee's diabetes and gave good performance reviews).

For the foregoing reasons, Plaintiff fails to state a claim for disparate treatment.

> **2.** **Plaintiff Has Failed to State a Claim for Failure to Provide a Reasonable Accommodation in Employment in Violation of the ADA and Section 504.**

Plaintiff alleges that he was denied reasonable disability accommodations, Compl. ¶ 73-74 but fails to state a claim for unlawful discrimination by NC State for failure to provide a reasonable accommodation. To establish a case for failure to accommodate, plaintiff must show (1) that he was

15

an individual who had a disability within the meaning of the statute; (2) that NC State had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that NC State refused to make such accommodations. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). "Implicit in the fourth element is the . . . requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atlantic Capital Mgmt.*, 131 Fed. Appx. 399, 400 (4th Cir. 2005). Under the ADA and Section 504, employers have a good faith duty to engage with their employees in an interactive process to identify a reasonable accommodation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015); *Boone v. Bd. of Governors of the Univ. of N.C.*, 858 Fed. Appx. 622, 623 (4th Cir. 2021).

When Plaintiff requested an accommodation, NC State had a duty to engage in the interactive process with him to identify a reasonable accommodation. *See* 29 C.F.R. § 1630.2(o)(3). *Wilson*, 717 F.3d at 346-47 (describing the duty). There is no "hard and fast rule" to determine if NC State took part in the interactive process in good faith. *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. Appx 314, 322-23 (4th Cir. 2011) (quoting *Beck v. Univ. of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996)). Rather, courts look to see if one party failed "to make reasonable efforts to help the other party determine" a specific reasonable accommodation. *Beck,* 75 F.3d at 1135-36. It is the party who causes the interactive process to break down who is not acting in good faith. *See id.*

While Plaintiff makes the conclusory allegation that NC State failed and refused to engage in the interactive process, Compl. ¶ 74, Plaintiff's factual allegations establish that NC State *did* engage in the interactive process as required. Plaintiff alleges that on October 10, 2021, he submitted a request for accommodations due to his mental disabilities and detailed the accommodations that he was seeking as related to his Fall Semester 2021 GTA position. Compl. ¶ 48. He also makes clear

that, in January 2022 (by which time he had a GRA appointment and was no longer being supervised by Dr. Yingling), he met with April Baer, an OIED representative, to discuss potential accommodations. Compl. ¶ 59. The Complaint does not plainly state the accommodations that Plaintiff requested at that time, nor does it explain which accommodations NC State refused to make. As a result, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

According to Plaintiff's allegations, Dr. Baer did attempt to address his complaints about Dr. Yingling by finding a new office for him.[6] Compl. ¶ 60. Plaintiff then received a letter dated April 13, 2022, which he expressly alleges "denied . . . all requested accommodations and instead, provided a list of options for Mr. Manning to implement as ADA accommodations":

> 1) Adjust your work schedule to be in alignment when the department's breakroom is available and you are more likely to engage with other members of your department/college within the building;

> 2) Use a cooler for safe food storage when you are unable to access your department's breakroom; and/or

> 3) Work from a remote location which best meets your needs.

Compl. ¶ 61. NC State's response to Plaintiff establishes that the university took steps to engage in the interactive process with Plaintiff. Thus, NC State cannot be liable for failing to engage in the interactive process in good faith.

For all of these reasons, Plaintiff's claim for failure to accommodate should be dismissed.

**B. Plaintiff Has Failed to Allege Facts to Support His Claim for Retaliation.**

To state a claim for retaliation under the ADA and the Rehabilitation Act, Plaintiff must allege

---

[6] "[I]t is well settled that the 'ultimate discretion' to choose among reasonable accommodations rests with the employer." *Hannah v. UPS*, 72 F.4th 630, 636 (4th Cir. 2023) (citing *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415-16 (4th Cir. 2015)). That an employee would have preferred to be accommodated in some other way does not support a claim of discrimination. *Id.* at 637.

that: (1) he engaged in conduct protected under the ADA; (2) he suffered an adverse employment action after engaging in the protected conduct; and (3) there is "a causal link . . . between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Where any of these elements is not pleaded, a complaint fails to state a cause of action and should be dismissed. *Id.*

For purposes of the ADA, protected activity includes "opposing any act or practice made unlawful under [the ADA]," 42 U.S.C. § 12203(a), and "requesting an accommodation" for a disability. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 577 (4th Cir. 2015) (observing that the plaintiff "clearly engaged in protected activity by submitting a request for an accommodation"); *Wimbush v. Donahoe*, 2012 U.S. Dist. LEXIS 33388, *36 (M.D.N.C. 2012) (analyzing EOE complaint and requests for accommodations as protected activity under Section 504).

Here, Plaintiff alleges that he requested accommodations related to his employment. Compl. ¶ 81. Additionally, he submitted complaints to NC State's DRO and OIED complaining of discrimination, harassment, and retaliation. *Id.* Based on these allegations, it appears that Plaintiff engaged in at least one form of protected activity.

The Supreme Court has held that, in the retaliation context, an adverse employment action need not affect an employee's "terms or conditions of employment." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 70 (2006). But not all retaliation is actionable; rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning that it "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68. At the same time, the Supreme Court has made clear that a plaintiff is not protected from "trivial" harm. *Id.* An employer's action is not materially adverse if it amounts to "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* While an adverse action for a discrimination claim and an action that is materially

adverse for a retaliation claim are slightly different, it is clear that the employer's action must result in some significant detrimental effect on the plaintiff's employment or alter the conditions of the workplace. "[B]oth claims share a common element: an *adverse* action, meaning some action that results in some significant detriment to the employee." *Id.* (emphasis in original) (citations and internal quotation marks omitted).

As stated above, Plaintiff fails to allege an adverse action relating to his employment; in addition, he fails to provide factual information that the employer took any action against him that was materially adverse. Most significantly, Plaintiff remained appointed to the GRA position until it naturally expired in June of 2022. Compl. ¶ 62. Additionally, Plaintiff was not dissuaded from filing various complaints with internal units at the university and the EEOC. Because Plaintiff has failed to allege facts to support that he suffered a materially adverse action after engaging in a protected activity, he cannot make out the elements of a retaliation claim. However, assuming without admitting that any action is construed as being materially adverse, his retaliation claim still falls short, as he cannot show any causal connection between any protected activity and the alleged action.

For a retaliation claim, a plaintiff may establish a causal connection between his protected activity and the corresponding alleged retaliatory action through both direct and indirect evidence. *Jacobs,* 780 F.3d at 577. However, in *Iqbal*, the Court stated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. 556 U.S. at 678. Plaintiff's conclusory allegations[7] related to causation are insufficient to state a claim. Plaintiff has failed to allege facts which would indicate that Dr. Yingling was fully aware of any protected activity and that she took a materially adverse action against Plaintiff because of the

---

[7] Plaintiff makes the conclusory allegations that "[a]fter Mr. Manning engaged in protected activity that Yingling knew he had engaged in . . .," and that there was "temporal proximity of Mr. Manning's engagement in the protected activities and the adverse employment actions taken against him by Yingling." Compl. ¶¶ 82-83.

protected activity.

If the decision-maker did not know that "its employee engaged in protected conduct, it stands to reason that the employer did not act out of a desire to retaliate for conduct of which the employer was not aware." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017). *See Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) ("[B]y definition, an employer cannot take action because of a factor of which it is unaware[.]") When viewed in full, the Complaint shows that there is no causal connection between Plaintiff's request for accommodations and submission of complaints to NC State and the allegedly adverse actions Plaintiff claims Yingling took against him. For example, Plaintiff has failed to establish that Yingling was aware of his protected activity and acted in response to Plaintiff's complaints. Thus, Plaintiff has not sufficiently alleged a causal connection.

For all these reasons, Plaintiff's retaliation claim should be dismissed.

### C. Plaintiff Has Failed to Allege Facts to Support His Claim for Hostile Work Environment Based on a Disability.

To establish a hostile work environment claim under the ADA and the Rehabilitation Act, the plaintiff must show that:

> (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.

*Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001); *Edmonson v. Potter*, 118 Fed. Appx. 726, 730 (4th Cir. 2004).

"To recover on a hostile environment claim, a plaintiff must demonstrate not only that he subjectively perceived his workplace environment as hostile, but also that a reasonable person would so perceive it, i.e., that it was objectively hostile." *Fox*, 247 F.3d at 178. Factors considered with

respect to the objective component include the frequency of the discriminatory conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with an employee's performance. *Id.* Exchanges in the workplace that are merely "disrespectful, frustrating, critical, and unpleasant" are insufficient to create a hostile work environment. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003).

In the present case, Plaintiff fails to allege facts that, taken as true, would support a finding that he had been subjected to a hostile work environment based on his disability. Plaintiff alleges that Dr. Yingling created a hostile working environment by

> mocking him; refusing to provide him with guidance on how to improve his work product that Yingling constantly insisted was wrong; telling Mr. Manning that he was a "risk" and "liability" because of his disability; stating flippantly that she too had mental health issues when Mr. Manning attempted to speak to her about his disabilities; making Mr. Manning publicly post his medical appointments . . . .

Compl. ¶ 89. The other allegations in the Complaint delineated to support Plaintiff's harassment claim are littered with recitations of the elements of the claim and conclusory statements, which are not stated with enough particularity to survive dismissal.

The scant factual allegations relating to this claim do not come close to approaching what is necessary to show that Plaintiff was subjected to unwelcome harassment based on his disability that was sufficiently severe or pervasive to alter a term or condition of employment and that there is a basis to hold NC State accountable for such alleged harassment. For example, the allegation that "Yingling harassed and discriminated against [Plaintiff] and created an overtly hostile working environment by…telling [him] that he was a "risk" and a "liability" because of his disability" is not severe or pervasive. *See Jessup v. Barnes Group, Inc.,* 23 F.4th 360 (4th Cir. 2022) (declining to find a hostile work environment where the company president told the employee that the employee "would have been a 'risk' to [the company] in his old position because he could have had 'a heart

attack or stroke.'") *compare with Fox*, 247 F.3d at 179 (plaintiff presented evidence "not of a few isolated incidents of harsh language, teasing, or insensitivity, but rather of regular verbal harassment and occasional physical harassment over a period of nearly ten months directed at [plaintiff] because of his disability.").

Viewing Plaintiff's Complaint in its entirety and even taking the allegations in the light most favorable to Plaintiff, Plaintiff has failed to allege facts to support his claim for hostile work environment, and the claim should be dismissed.

**III.  Plaintiff Cannot Recover the Damages He Seeks.**

**A.    Plaintiff Cannot Recover Punitive Damages under Section 504**.

Plaintiff (in what he has captioned his "Seventh Cause of Action") seeks to recover punitive damages.  Despite his allegations to the contrary, *see, e.g.,* Compl. ¶ 104, he is not entitled to punitive damages.

Plaintiff may not recover punitive damages for his Section 504 claims. The United States Supreme Court has unequivocally held that, as with suits brought under Title VII of the Civil Rights Act of 1964, punitive damages cannot be awarded for violations of § 504 of the Rehabilitation Act. *See Barnes v. Gorman,* 536 U.S. 181, 189 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under. . . § 504 of the Rehabilitation Act."); *see also Costello v. Univ. of N. C. at Greensboro*, 394 F. Supp. 2d 752, 761 (M.D.N.C. 2005) (dismissing plaintiff's prayer for punitive damages because "punitive damages cannot be awarded for violations of § 504 of the Rehabilitation Act.").

**B.    Plaintiff Cannot Recover Any Legal Damages (Compensatory or Punitive) for His ADA Retaliation Claim.**

In his second claim for relief (retaliation), Plaintiff alleges that he has suffered pecuniary losses. Compl. ¶ 86. In his prayer for judgment, Plaintiff seeks to recover compensatory and punitive damages for his retaliation claim (and his other claims). However, as recognized by the Fourth Circuit, "ADA-retaliation plaintiffs cannot recover legal damages." *Israelitt v. Enter. Servs. LLC*, 2023 U.S. App. LEXIS 21405, *26 (4th Cir. 2023). As explained by the court, "ADA retaliation plaintiffs get the remedies 'available under' § 12117. Yet compensatory and punitive damages are not a remedy 'under' § 12117." *Id.* at *25; *see also Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 965 (7th Cir. 2004) (noting that "a meticulous tracing of the language of this tangle of interrelated statutes reveals no basis for plaintiff's claim of compensatory and punitive damages in his ADA retaliation claim") (quoting Brown v. City of Lee's Summit, No. 98-0438-CV-W-2, 1999 U.S. Dist. LEXIS 17671, 1999 WL 827768, at *3 (W.D. Mo. June 1, 1999))). As such, Plaintiff is not entitled to a jury trial on his ADA retaliation claims. *Id.* at *26 (holding that because ADA-retaliation plaintiffs are not entitled to legal damages, they "are not guaranteed a jury trial by the Seventh Amendment.").

### C. Plaintiff Cannot Recover Punitive Damages against NC State, a State Entity.

While Plaintiff is not entitled to recover punitive damages for his Section 504 claims or his ADA retaliation claim for the specific reasons set forth above, Plaintiff is also barred from recovering punitive damages from NC State as an arm of the State of North Carolina.[8] *See, e.g.*, *McNeill v. Fayetteville State University*, 2018 U.S. Dist. LEXIS 237618, *19 (E.D.N.C. 2018) ("Defendant

---

[8] The University of North Carolina and its constituent institutions, including NC State, are agencies of the State of North Carolina. *See, e.g.*, N.C. Gen. Stat. §§ 150B-2(1a), 116-4 (2017); Roberson, 464 F. Supp. at 689.

correctly argues that Defendant, as an agency of the State of North Carolina, cannot be liable for punitive damages under the ADA."); *Gibson v. Henderson,* 129 F. Supp. 2d 890, 904 (M.D.N.C. 2001) (holding that punitive damages are not available against governmental entities in Section 504 cases).

> Government agencies are immune from punitive damages under Title VII. 42 U.S.C. § 1981a(b)(1). By analogy, Congress cannot have intended to subject state agencies to punitive damages on claims brought under the ADA and the Rehabilitation Act. *Accord Crain v. Gaston Cty. Bd. of Educ.*, No. 3:15cv188, 2015 U.S. Dist. LEXIS 144257, 2015 WL 6449413, at *6 (W.D.N.C. Oct. 23, 2015). Thus, Plaintiff is not entitled to punitive damages against WCU for a violation of the ADA or the Rehabilitation Act.

*Longo v. Aspinwall*, 2019 U.S. Dist. LEXIS 118612, *15 (W.D.N.C. 2021).

Thus, as set forth above, even if Plaintiff's claims were viable, his claim for punitive damages (and for compensatory damages under this retaliation claim) against NC State must be dismissed as a matter of law.

## CONCLUSION

Plaintiff's claims against North Carolina State University should be dismissed for all the reasons explained above.

This 25th day of August, 2023.

JOSHUA H. STEIN
Attorney General

 /s/ Adrina G. Bass
Adrina G. Bass
Special Deputy Attorney General
NC State Bar No. 39521
abass@ncdoj.gov

North Carolina Department of Justice
PO Box 629
Raleigh, NC  27602
Tel: 919-716-6920
Fax: 919-716-6764

*Attorney for Defendant*

## **CERTIFICATE OF WORD COUNT**

The undersigned hereby certifies that the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS does not exceed 8,400 words, including the body of the brief, headings and footnotes in compliance with Local Rule 7.2(f)(3). The undersigned relies on the word count feature of the word processing software used to prepare this memorandum in making this certification.

This 25th day of August, 2023.

 /s/ Adrina G. Bass
Adrina G. Bass
Special Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF users, including Plaintiff's counsel, Dawn T. Mistretta (dmistretta@gmlawyers.org) and Aliyah S. Adams (aadams@gmlawyers.org).

This 25th day of August, 2023.


 /s/ Adrina G. Bass
Adrina G. Bass
Special Deputy Attorney General